UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SYED A. HUDA                                    CIVIL ACTION

VERSUS                                          NO: 07-9090

LOCKHEED MARTIN                                 SECTION: J(2)

## ORDER AND REASONS

Before the Court is  Defendant Lockheed Martin's ( "Lockheed")
**Motion for Summary Judgment** (Rec. Doc. 76), seeking dismissal with
prejudice of Plaintiff's claims.

In his opposition, Plaintiff has indicated that he has
abandoned his harassment and non-promotion claims.  As a result of
this abandonment and other orders of the Court, Plaintiff's only
remaining claim is one for wrongful termination.  Additionally, and
in light of this late abandonment of claims, Lockheed seeks an
award of attorney's fees in connection with its motion for summary
judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was employed by Lockheed until March 2, 2007, when
he was terminated for violation of company policy.  Believing he
was wrongfully terminated, Plaintiff filed a complaint with the
Equal Employment Opportunity Commission ("EEOC"), dated March 5,
2007, alleging discrimination based on: (1) race, (2) national
origin, and (3) religion.  Lockheed responded to Plaintiff's EEOC

1

claims, and Plaintiff then complied with the EEOC's request for "additional rebuttal information" by submitting an additional statement dated August 21, 2007. Subsequently, Plaintiff filed suit on November 21, 2007, under Title VII after receiving a right-to-sue letter on October 29, 2007.

Plaintiff's suit asserted claims for discrimination based on: (1) race, (2) national origin, and (3) religion, as asserted before the EEOC, as well as claims alleging: (4) retaliation (retaliatory discharge), (5) discrimination as to promotions, and (6) harassment (or hostile environment). In response, Lockheed filed a 12(b)(6) and 12(b)(1) Motion to Dismiss Plaintiff's claims of retaliation ad non-promotion on the grounds that several of plaintiff's claims were not included in his EEOC charge. Subsequently, this Court held that it had subject matter jurisdiction over Plaintiff's non-promotion claim, but dismissed Plaintiff's retaliation as not reasonably arising out of his EEOC charge.[1] Plaintiff then sought reconsideration of the dismissal, which the Court denied.

Thereafter, Lockheed filed a Motion for Summary Judgment during the summer of 2008. Plaintiff's counsel filed several

---

[1] In Plaintiff's Memorandum in Opposition to Lockheed's motion to dismiss, he attached a copy of an August 11, 2007 letter to the EEOC as proof that he had raised the promotion claim with the EEOC. After receipt of a FOIA response, it was learned that this letter was sent to the EEOC after Lockheed's response to the charge and upon the EEOC asking Plaintiff to respond to Lockheed Martin's response to his charge.(See Defendant's Exhibit 12). Lockheed submits that it was unaware of the letter and at no time was asked to respond to the letter.

Motions to Continue which resulted in the decision to move the trial date.[2] At that time, the Court advised Lockheed to re-file its Motion for Summary Judgment at a later date, which it has now done.

Plaintiff worked for Lockheed for approximately ten years in several capacities. The last positions he held was in the Metrology department as a metrologist. He held this position from 2002 until March 2, 2007. The Metrology department is located in building 103 at the Michoud plant. The zone in which Building 103 is located at Michoud can only be accessed by employees with an approved badge. The employee badge is used as a swipe card which, if authorized, allows individuals access to the building and to the zone in which the building is located. The swipe card system also tracks the time of employees' ingress and egress at the various buildings and/or zones on the property.

As a result of the complaint of a former employee who had worked in Metrology, Lockheed learned that Plaintiff was often leaving work early, but indicating on his time sheet that he had worked a full day. Don Piglia ("Piglia") of Lockheed's Employee and Labor Relations Department conducted an investigation. Piglia

---

[2] Lockheed points out in its Memo in Support of Motion for Summary Judgment that Plaintiff "often contended that he needed to conduct additional discovery but, despite Lockheed's subsequent requests as to whether Plaintiff wanted to schedule other depositions, Plaintiff has not scheduled any further depositions nor conducted any further discovery."

interviewed Plaintiff and obtained, among other things, NASA's records, which reflected entry and exits from all buildings/zones at Michoud where the swipe card system was in use.

Piglia made a request for the swipe card records for all employees in the Metrology department, including Plaintiff, for the time period of December 4, 2006, to January 18, 2007. This request was for responsive records on a plant-wide basis.[3] After comparing the swipe card records to the work time reported by Plaintiff on his daily time sheets for the time period in question, the differences were significant. Specifically, Piglia discovered that there were 26 different occasions over the six week calendar period when Plaintiff's time records did not match the swipe card records, which demonstrated when he actually left the plant. Plaintiff has suggested that he left the zone where Building 103 was located at various times to go to other areas of the plant. However, the plant-wide swipe card records for the six weeks in question only show him leaving the zone where Building 103 is located. The records do not show him swiping his card to leave Building 103's zone and entering another area of the plant on any of the 26 days in question. After examining and comparing the swipe card records and the time sheets, Piglia determined that there were days on

---

[3]Lockheed submits to the Court that Plaintiff has suggested that it was not a plant-wide request, however he has produced no proof to corroborate this claim. Piglia has signed an affidavit regarding the scope of what he requested. See Rec. Doc. 32-27.

which Plaintiff overstated his alleged work time, by as much as three hours. Rec. Doc. 32-20. On almost every one of the 26 occasions at issue he overstated his work time in excess of one hour.  Id.

The record reflects that Plaintiff was trained on how to properly record his work time on the computerized time sheets. Lockheed refers to this as "labor charging practices training." Lockheed's internal training records show that Plaintiff received such training on June 10, 1998, January 28, 2002, January 27, 2004, February 14, 2005, and May 3, 2006.  Rec. Doc. 32-14. Plaintiff does not deny that he received this training.

Plaintiff kept his daily time on a computer using a CPR Electronic Timecard System.  In order to record his work time, Plaintiff had to log in to the CPR System.  The initial login page of the CPR system contained the following language on the first page:

> Your electronic signature certifies your accountability for accurate, timely and authorized attendance/labor reporting and charging practices. The ETS is the property of Lockheed Martin Corporation and is intended for the use of authorized users only.  All activities of individuals using the ETS are monitored and recorded by company personnel.  <u>If any such monitoring reveals possible evidence of false or inaccurate record keeping or criminal activity, such evidence may be provided to company officials for disciplinary action</u> (up to and including discharge from employment), and to appropriate government officials for use in administrative, civil, and criminal enforcement actions.

Rec. Doc. 32-21 (emphasis added). In order for Plaintiff to proceed beyond the above warning screen, he had to enter his name and password. In addition to the above quoted language, Lockheed also had a written corporate policy on "Employee Attendance and Labor Cost Reporting" which provides, in pertinent part the following:

> All employees are responsible to ensure that their attendance hours and labor charges (and those of any subordinates) are to the best of their knowledge accurate.

Rec. Doc. 32-22. The written corporate policy also provides that:

> (3)Improper attendance reporting or labor charging by an employee . . . can be the basis for disciplinary action up to and including termination.

Id. These policies were in place to advise all of Lockheed's employees that work time has to be reported correctly, and that falsifying work time is grounds for discipline, including termination. Once the alleged misreporting was discovered, Lockheed reported the matter to NASA (its contractor) and classified the time as "unallowable." Rec. Doc. 32-23.

After the completed investigation by Employee and Labor Relations, Plaintiff was referred to the Administrative Review Committee ("ARC") for disciplinary review.[4] The ARC reviewed the

---

[4] Lockheed avers that this is the normal procedure for discipline of a salaried exempt employee.

information and concluded as follows:

> A review of the facts in this case reveals that
> [Plaintiff] did not properly record his time on
> several instances during the period of review.  He
> has violated timekeeping policies and procedures by
> leaving early and/or coming to work late and not
> recording it. Therefore, it is the recommendation
> of the Administrative Review Committee that
> [Plaintiff's] employment with Lockheed Martin is
> terminated for falsification of his timecard.

Rec. Doc. 32-24. The ARC's recommendation was then reviewed and

accepted by the Executive Review Committee ("ERC") and Plaintiff

was terminated on March 2, 2007. Plaintiff admitted that he was not

familiar with the ARC/ERC process. Rec. Doc. 32-4, p.184.  He

testified that he believed that Kevin Hale, his supervisor, was in

charge of the investigation.  However, Lockheed points out that

Piglia was the only person to interview Plaintiff in connection

with the investigation and it was Piglia that Plaintiff submitted

a written statement to regarding this problem.

## PARTIES' ARGUMENTS[5]

Lockheed argues that Plaintiff has failed to offer any proof

to substantiate his claims of discriminatory termination, and has

failed to state a prima facie case of discriminatory discharge.

Lockheed further argues that Plaintiff's termination claim is

focused solely on his alleged retaliation claim, which was

---

[5] As noted earlier, Plaintiff has abandoned his harassment
claim and non-promotion claim against Lockheed.  Thus, Lockheed's
arguments regarding these claims are omitted. See Defendant's
Memorandum in Support of Motion for Summary Judgment, p. 10-20.

previously dismissed by this Court. Regardless, and to the extent
that Plaintiff's remaining claim is one of discriminatory as
opposed to retaliatory discharge, Lockheed moves for summary
judgment on this claim on the ground that Plaintiff was terminated
for falsifying his time sheets on approximately twenty-six
occasions between December 4, 2006 and January 18, 2007. Lockheed
contends that terminating an employee for falsifying time sheets is
a legitimate nondiscriminatory reason under <u>Avant v. South Central</u>
<u>Bell</u>, 716 F.2d 1083, 1087 (5th Cir. 1983). In support, Lockheed
submits to the Court that Plaintiff admitted that it was common
knowledge that an employee may not falsify time records (Rec. Doc.
32-3, p. 107) and that he was aware of Lockheed's rules prohibiting
falsification of records (Rec. Doc. 32-3, p. 105). Plaintiff also
openly acknowledged that he was told that his termination was
motivated by the discovery of errors in his timekeeping.(Rec. Doc.
32-4, p. 187). Thus, Lockheed avers that based on the evidence
submitted, Lockheed has carried its burden of producing evidence
that reflects a legitimate nondiscriminatory reasons for
terminating Plaintiff. Similarly, Lockheed alleges that because of
Plaintiff's actions, Lockheed was forced to advise NASA and make
retroactive billing adjustments - an action consistent with its
position that Plaintiff's actions were in violation of Lockheed
policy. Thus, Lockheed points to this fact as evidence supporting
its position that there was a legitimate nondiscriminatory reason

for terminating Plaintiff.

Lockheed further alleges that as a result of articulating a legitimate nondiscriminatory reason for terminating Plaintiff, the burden switches to Plaintiff to present evidence that this reason is merely a pretext for discrimination. Lockheed claims that Plaintiff has presented no evidence of pretext. Rather, Plaintiff's explanations for his absences have varied throughout the development of this case and are either false or inapplicable. Specifically, Lockheed points out that during the investigation, Plaintiff stated that the reason for his absence from work was related to the repairing of his home, which was damaged in Hurricane Katrina. Later, in Plaintiff's deposition, he alleged yet another explanation for his absence, namely the possibility that he might have been performing audits outside of building 103 during December 2006 or January 2007. Lockheed has submitted audit records that directly contradict this contention. Finally, Lockheed points to Plaintiff's most recent explanation for his absence, which alleges that he was working out in the gym during these periods of time, and moreover, was authorized to do so per an interoffice memo that was allegedly distributed in the 1990s. However, Plaintiff has been unable to produce said memo and has failed to present any testimony of any employee to corroborate his claim that this memo existed. Moreover, Lockheed contends that even if this allegation were believable, it would still mean that

he lied on his time sheets about the hours he worked. Thus, Plaintiff has failed to prove that Lockheed's articulation of a legitimate nondiscriminatory reason for termination is merely a pretext.

Finally, Lockheed argues that the Plaintiff has no witnesses to support his claims. Specifically, Lockheed has submitted the affidavits of Kevin Hale, Robert Officer, Paula Hartley, John Welborn, Robert Mitchell, and Tom Lebouef, wherein all of these individuals dispute plaintiff's version of the facts of this case. Therefore, Lockheed moves that this Court grant Summary Judgment in its favor based on the fact that other than his self-serving testimony, Plaintiff has no proof to support his claim.

In response to Lockheed's argument as it pertains to the termination claim, Plaintiff avers that there are material issues of fact with respect to the motivation behind his termination from Lockheed. He provides as support evidence that the complaining supervisor, Hale, participated in the same gym time practice and condoned it as followed by Plaintiff and another co-worker. Moreover, Plaintiff suggests that his co-workers corroborate his claim that he in fact performed work outside of building 103, which corroboration Lockheed ignored in its computer turnstile analysis. Finally, Plaintiff argues that the production of Smart System records represents "an incomplete picture of plaintiff's work." Therefore, Plaintiff argues that he has carried his prima facie

burden of showing an impermissible discriminatory termination. Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir.1999).

In its Reply Memorandum, Lockheed re-urges its arguments regarding Plaintiff's failure to provide evidence to support his remaining claim of discriminatory termination. Lockheed points out that Plaintiff's allegations that he was somewhere on the Lockheed premises, despite the fact that the turnstile records show that he left the premises, are without merit, as he as failed to provide any type of evidentiary support to back up these contentions. Moreover, Lockheed represents that while Plaintiff claims he may have been working on equipment outside of the metrology area, he fails to explain why he never returned to the metrology building on any of the dates in question. Finally, Lockheed addresses Plaintiff's claim that his situation is analogous to that of Robert Officer.[6] In response, Lockheed points out that the reasons for Officer's disciplinary action are quite different from the actions of Plaintiff which gave rise to the disciplinary action taken against him, and any attempt to compare the two situations is specious and does not support his claim of discriminatory

---

[6] Plaintiff argues that Officer similarly left the Lockheed facility without telling anyone and recorded his absent time, all without any disciplinary action. However, Lockheed notes that Officer, unlike Plaintiff, suffers from a heart condition, and was under doctor's orders to exercise by walking at the end of his shift on certain days. Further, Lockheed notes that Officer *was* in fact disciplined, notwithstanding his medical reason for taking off to exercise, because he did not advise his supervisors of the situation.

termination. Citing the Fifth Circuit's decision in <u>Mayberry v.</u>
<u>Vought Aircraft Co.</u>, Lockheed concludes that Plaintiff has failed
to carry his burden, as it is well-established that where a
plaintiff claims he was discriminated against in reference to a
work place rule violation and that other employees were treated
differently for violation of the same rule, he must show that the
other employees were treated differently "under circumstance nearly
identical to his." 55 F.3d 1086, 1090 (5th Cir. 1991); See also
<u>Little v. Republic Ref. Co.</u>, 924 F.2d 93,97 (5th Cir. 1991). Thus,
because Officer's circumstances were *not* similar to Plaintiff's,
this allegation is irrelevant.

Lockheed also prays for relief in the form of an award of
costs and fees for Plaintiff's late abandonment of certain claims
as described above. Specifically, Lockheed contends that an award
of costs and fees on its motion as to Plaintiff's non-promotion and
harassment claims is warranted due to Plaintiff's subsequent
abandonment of these claims after having previously sought
reconsideration of a 12(b) motion which was granted by this Court
on the ground that certain claims originally plead were frivolous.
Moreover, after discovery and numerous delays requested by
Plaintiff regarding a hearing on Lockheed's Motion for Summary
Judgment, Plaintiff has simply abandoned his harassment and non-
promotion claims. Lockheed submits to the Court that this is not
a new approach by Plaintiff's counsel and cites to Civil Action No.

05-0309 in the Western District of Louisiana, <u>Vanderhoff v. Prentice</u>, wherein attorneys fees and costs were awarded where the plaintiff, who was represented by same counsel, abandoned claims and/or did not oppose a Motion to Dismiss after several years of litigation. Accordingly, Lockheed argues that under 42 U.S.C. §2000e-5(k) a District Court has discretion to award attorneys fees and costs to the prevailing party on an issue under Title VII. <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1223 (11th Cir. 2007). Therefore, Lockheed prays for an award of reasonable fees and costs to defendant as to Plaintiff's non-promotion and harassment claims which Plaintiff has now abandoned.

## LAW AND ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986).

### B.    Discriminatory Termination in Violation of Title VII

A plaintiff who seeks to prove that his employer discriminated against him by terminating his employment in violation of Title VII can do so by submitting either direct evidence of intentional discrimination or, more commonly, circumstantial evidence. See Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003). Because Plaintiff seeks to establish his claim by circumstantial evidence, the three-part framework established in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies. First, the plaintiff must make out a prima facie case of employment discrimination by proving that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [his] protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). If the plaintiff carries his burden, a presumption arises that the employer unlawfully discriminated against him. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendant, in turn, may rebut this presumption by articulating "a legitimate, nondiscriminatory reason for its decision." Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). Finally, if the defendant produces evidence of a nondiscriminatory reason for the discharge, the burden shifts back to the plaintiff to prove that "the employer's proffered

14

reason is not true but instead is a pretext for the real discriminatory ... purpose." <u>McCoy</u>, 492 F.3d at 557. The plaintiff may do so either "through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence,' " meaning that the explanation "is not the real reason for the adverse employment action." <u>Laxton</u>, 333 F.3d at 578 (citing <u>Reeves v. Sanderson Plumbing Prods., Inc</u>., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

**1. Prima Facie Case**

In <u>Mayberry v. Vought Aircraft Co.</u>, the Fifth Circuit articulated that in work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly". 55 F.3d 1086, 1090 (5th Cir. 1995); See also <u>Green v. Armstrong Rubber Co.</u>, 612 F.2d 967, 968 (5th Cir.), cert. denied, 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980). Specifically, there must be a showing that the defendant made an employment decision that was motivated by a protected factor in order to establish a prima facie case of employment discrimination. <u>Mayberry</u>, 55 F.3d at 1089. If the plaintiff is able to establish a prima facie case, the burden is on the defendant to produce evidence that its employment decision was based on a legitimate nondiscriminatory reason. <u>Id.</u> The burden

shifts back to the plaintiff to prove that the reasons provided by the defendant are a mere pretext for discrimination. Id. If it appears that the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case "simply drops out of the picture", St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); and "the ultimate question [is] discrimination vel non ". Id. at 503, 113 S.Ct. at 2753 (citation omitted).

In the present case, it seems that Plaintiff attempts to assert both (1) that he did not violate the policy of Lockheed or that his actions were authorized by his superiors, and (2) that even assuming he was in violation of this policy, similarly situated white employees were not disciplined to the same extent as he was for the same or similar violations. However, both of these contentions are problematic for Plaintiff in light of the clear contradictory evidence offered by Lockheed. Lockheed has provided the Court with the computer generated records of Plaintiff's actual hours worked as well as the representations made by Plaintiff regarding the hours that he worked. Specifically, after a thorough investigation, Lockheed discovered 26 different occasions over the six week calendar period in question during which Plaintiff's time records did not match the swipe card records which demonstrated when he actually left the plant. Plaintiff has suggested that he

left the zone where Building 103 was located at various times to go to other areas of the plant. However, the plant-wide swipe card records for the six weeks in question only show him leaving the zone where Building 103 is located. The records do not show him swiping his card to leave Building 103's zone and entering another area of the plant on any of the 26 days in question. After examining and comparing the swipe card records and the time sheets, there are days where Plaintiff overstated his alleged work time, by as much as three hours. Rec. Doc. 32-20. On almost every one of the 26 occasions at issue he overstated his work time in excess of one hour. Id. Plaintiff's explanations of these overstatements are merely argumentative and are not based on evidence sufficient to preclude Lockheed's summary judgment arguments.

Similarly, Plaintiff's argument that similarly situated employees not of a protected class were engaged in the same practices but were not disciplined in the same manner is without merit. Plaintiff attempts to establish a parallel between his practice of leaving the facility and recording his absent time as work time, and the situation of Robert Officer. However, the incident involving Robert Officer is not comparable to the incident involving Plaintiff , especially in light of the fact that Officer suffers from a heart condition and was under doctor's orders to exercise at the end of his shift on certain days. In fact, the reason Robert Officer was disciplined was not for his act in taking

these walks, but rather for failure to request an accommodation, which would have been granted. Plaintiff has presented no evidence that would allow for any relevant comparison between his discharge and the disciplinary action against Officer. Moreover, in his discovery responses, Plaintiff identified Eddie Johnson, Brian Dafni, and Robert Mitchell as individuals who had possibly violated the work rule without any consequences. However, no evidence was provided to substantiate these claims.

Finally, Lockheed submits in its brief that it has terminated and disciplined other employees for falsifying time records in the past. Rec. Doc. 32-33 & 34. To establish a prima facie case in this manner, Plaintiff must show that white employees were treated differently under circumstances "nearly identical" to his. Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991); Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990). Plaintiff has failed to provide the Court with any such evidence.

In sum, a Plaintiff may establish a prima facie case by showing that the he did not violate the work-rule for which he was disciplined or that even if he did violate the rule, white employees violated the rule and were not disciplined. Green, 612 F.2d at 968. The time records submitted by Lockheed are sufficient evidence to show that Plaintiff did in fact make the false representations as to his time worked. Moreover, Plaintiff himself acknowledged that the reason he was terminated from Lockheed was

his violation of the Lockheed policy as it regards to recording one's work hours. Finally, Plaintiff has not shown with any competent summary judgment evidence that other similarly situated white employees violated the same time-keeping rule and were not disciplined. Therefore, Plaintiff has failed to make a prima facie showing that he was a victim of a discriminatory termination by Lockheed, and Lockheed is entitled to summary judgment of Plaintiff's claims.

### 2. Pretext

Even if Plaintiff had established a prima facie case, it would nonetheless fail at the third stage of the <u>McDonnell Douglas</u> analysis. Lockheed has offered evidence of a legitimate, nondiscriminatory reason for its discharge decision: Plaintiff's conduct in falsifying his time sheets on approximately twenty-six occasions between December 4, 2006 and January 18, 2007. In response to Plaintiff's allegations, Lockheed insists that there was no racial motivation in its decision to terminate Plaintiff; that the decision was based solely on its conclusion, following an investigation, that Plaintiff had violated its policy regarding time recordation. In <u>Avant v. South Central Bell</u>, 716 F.2d 1083, 1087 (5th Cir. 1983), the Fifth Circuit held that falsification of work documents is a legitimate non-discriminatory reason for terminating an employee. Furthermore, district courts in the Fifth

Circuit have specifically found that falsification of time sheets constitutes a legitimate non-discriminatory grounds for discharges. See, e.g., Lee V. Mostyn Law Firm, 2006 WL 571859, *4-5 (S.D. Tex. Mar. 6, 2006); Ebbs v. Folger Coffee Co., 1997 WL 472515, *3 (E.D. La. Aug. 18, 1997). Even assuming that Plaintiff was able to establish a prima facie case, which this Court finds he has not, Lockheed has discharged its burden of production by providing evidence that the decision to terminate Plaintiff was substantiated and not racially motivated. Thus, the burden would shift back to Plaintiff to prove that Lockheed's proffered reason is merely a pretext for discrimination. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff has failed to provide any evidence to suggest that Lockheed's decision to fire him was invalid and impermissibly motivated by discrimination. Moreover, Lockheed has submitted the SmartSystem records of Plaintiff's timekeeping as well as the recorded times for which Plaintiff entered and exited work during the pertinent period. Because Plaintiff has failed to advance any reason why this Court should not give credence to the explanation offered by Lockheed, he has not met his burden of showing an issue of fact as to whether its explanation is pretextual. Thus, there is no genuine issue of material fact to be resolved at trial, and Lockheed is entitled to summary judgment. See Keelan v. Majesco Software, Inc., 407 F.3d 332, 345 (5th Cir. 2005) (affirming grant of summary judgment

because plaintiff "created no fact issue that [defendant's] stated grounds for his termination were 'unworthy of credence.' ").

Finally, Plaintiff would have to show that he "was replaced by someone outside [his] protected group or was treated less favorably than other similarly situated employees outside the protected group." McCoy, 492 F.3d at 551. Lockheed asserts that Plaintiff has not made such a showing. Rather, both sides acknowledge that at this time the position formerly held by Plaintiff has not been filled. Plaintiff argues that the correct analysis in this situation is guided by the propositions set forth in Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999). Such reliance, however, is misplaced, as that case dealt with a situation where the employer decided to dissolve the position from which the plaintiff was terminated subsequent to plaintiff's discharge. There is no evidence that Plaintiff's position was dissolved in this case.

### C. Lockheed's Prayer for Award of Reasonable Costs and Attorney's Fees

The Supreme Court in Christianburg Garment Co. v. EEOC, 434 U .S. 412 (1978), set forth the standard of review for district courts faced with determining whether to award attorneys fees to a prevailing defendant in a Title VII case. In Christianburg, the Court held that subject to the district court's discretion, attorneys fees may be awarded to a prevailing defendant, upon a

finding that the plaintiff's action, even though not brought in subjective bad faith, was frivolous, unreasonable or without foundation, "or that the plaintiff continued to litigate after it clearly became so." Christianburg, 434 U.S. at 421. Thus, "[i]t is clear from Christiansburg that attorney's fees to a prevailing Title VII defendant are not routine, but are to be only sparingly awarded." Quiroga v, Hasbro, Inc., 934 F.2d 497, 503 (3rd Cir.), cert. denied, 502 U.S. 940 (1991).

"Cases where findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a ... motion for involuntary dismissal . . . [when], the plaintiffs did not introduce any evidence to support their claims." Sullivan v. School Bd., 773 F.2d 1182, 1189 (11th Cir. 1985). "On the other hand, in cases where the plaintiffs introduced evidence sufficient to support their claims, findings of frivolity typically do not stand." Id. at 1189. Thus, in determining if an award of fees to a Title VII defendant is appropriate, courts should consider several factors including "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Id.; United States v. Mississippi, 921 F.2d 604, 609 (5th Cir. 1991). These factors are, however, guideposts, not hard and fast rules. "Determinations regarding frivolity are to be made on

a case-by-case basis." <u>Sullivan</u>, 773 F.2d at.

In the case at bar, Plaintiff asserted a myriad of claims in his original Complaint. Out of this group, some of the claims were dismissed by Lockheed's 12(b) Motion (Rec. Doc. 12). Plaintiff opposed the 12(b) motion, including the request to dismiss plaintiff's non-promotion and harassment claims, alleging that Lockheed's 12(b) motion was frivolous, and even sought reconsideration of the granting of that motion. Plaintiff also requested that the discovery deadlines be pushed back several times to facilitate discovery in regards to these claims. After all of these allowances, during which time Plaintiff has apparently not conducted meaningful further discovery or scheduled *any* depositions, Plaintiff has abandoned his harassment claim and his non-promotion claim.

In the present circumstances, Plaintiff has engaged in two years of litigation, only to offhandedly abandon two claims at this late stage after seeking several continuances to allow for further discovery that he has not pursued. Moreover, Plaintiff has failed to establish a prima facie case; there have been no settlement offers; and the Plaintiff's claims have been dismissed without a trial. Unfortunately, the Court has seen a pattern of frivolous claims filed by the same counsel for Plaintiff. Under the circumstances, it is appropriate to award reasonable attorney's fees to Lockheed as the prevailing party. Accordingly,

**IT IS ORDERED** that Lockheed's **Motion for Summary Judgment** (Rec. Doc. 76) is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims in the above-captioned matter are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Lockheed's request for attorney's fees as presented in its **Reply Memorandum (Rec. Doc. 85)** is hereby **GRANTED**. Counsel for Lockheed shall file a properly supported motion for attorney's fees and costs within **14 days** of entry of this order. Any opposition shall be filed within **7 days** thereafter, at which time the Court will take under advisement the matter of attorney's fees.

New Orleans, Louisiana, this 1st day of May, 2009.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE